JUDGE SULLIVAN

18 CV 403

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**



| | |
|---|---|
| CENGAGE LEARNING, INC.; ELSEVIER, INC.; MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC; and PEARSON EDUCATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> DOE 1 D/B/A BARGAINSOFMAINE; DOE 2 D/B/A LACA_888, GOMEDIA, GOMEDIA8, and BOOKSMEDIA; DOE 3 D/B/A PEPPERACK; DOE 4 D/B/A MYFRIENDANDME02 and SATHIEL1492; DOE 5 D/B/A USAOKDEALS; DOE 6 D/B/A VINTAGEFREAKIE; DOE 7 D/B/A WAREHOUSE-DEALZ; and DOE 8 D/B/A WHOLSALENICK, <br><br> Defendants. | Civil Action No. <br><br> **COMPLAINT FOR:** <br><br> 1. **COPYRIGHT INFRINGEMENT** (17 U.S.C. § 101, *et seq.*) ; <br> 2. **SECONDARY COPYRIGHT INFRINGEMENT** (17 U.S.C. § 101, *et seq.*); <br> 3. **TRADEMARK INFRINGEMENT** (15 U.S.C. § 1114); <br> 4. **TRADEMARK COUNTERFEITING** (15 U.S.C. § 1114); and <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Cengage Learning, Inc., Elsevier, Inc., McGraw-Hill Global Education Holdings, LLC, and Pearson Education, Inc. (hereinafter, collectively "Plaintiffs," and each a "Plaintiff"), by and through their undersigned counsel, for their Complaint against Defendants Doe 1 d/b/a bargainsofmaine; Doe 2 d/b/a laca_888, GOMEDIA, GOMEDIA8, and booksmedia; Doe 3 d/b/a pepperack; Doe 4 d/b/a myfriendandme02 and sathiel1492; Doe 5 d/b/a usaokdeals; Doe 6 d/b/a vintagefreakie; Doe 7 d/b/a warehouse-dealz; and Doe 8 d/b/a wholsalenick (hereinafter, collectively "Defendants," and each a "Defendant"), allege as follows:

## NATURE OF THE CASE

1.    This is a case involving extensive violations of the federal laws concerning copyright and trademark infringement. It arises from the intentional reproduction, importation, distribution, and sale of counterfeit textbooks at the expense of authors, students, publishers and

others.

2.      Plaintiffs are four of the world's leading educational publishers.  They provide a comprehensive range of traditional and digital educational content and tools to professionals and students of all ages.

3.      Defendants are merchants, who, upon information and belief, are located across the globe, but conduct business in the United States by means of their online storefronts (hereinafter, collectively the "Storefronts," and each a "Storefront") primarily on eBay.com, as well as on Abebooks.com, Biblio.com, and Alibris.com (collectively, the "Online Marketplaces").  All Defendants sell and distribute counterfeit textbooks on eBay, and some also sell and distribute counterfeit textbooks on other Online Marketplaces.   Through their Storefronts, and hiding behind the anonymity of the Internet, Defendants sell counterfeit textbooks that infringe Plaintiffs' copyrights and bear unauthorized reproductions of Plaintiffs' federally registered trademarks.   Defendants sell the infringing textbooks to individual consumers, wholesale distributors, and other re-sellers.

4.      Plaintiffs sell their textbooks through various wholesale and retail channels. Plaintiffs' textbook sales on the Online Marketplaces—whether by wholesalers or individual resellers sellers—represent an important sales channel for Plaintiffs' textbooks.   Defendants advertise, offer, and sell their counterfeit textbooks on the Online Marketplaces to the same purchasers seeking out legitimate copies of Plaintiffs' textbooks.   Defendants identify the textbooks using the legitimate textbooks' respective titles, editions, authors, cover images bearing Plaintiffs' trademarks, and ISBN (the International Standard Book Number).  Defendants often sell their counterfeit copies well below market price for the legitimate books.  In so doing, Defendants undercut sales and the perceived value of authorized and legitimate copies of

Plaintiffs' textbooks.

5.     Plaintiffs bring this Complaint for damages and injunctive relief to stop and to seek redress for Defendants' infringement of Plaintiffs' intellectual property rights.

## JURISDICTION AND VENUE

6.     This is a civil action arising under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, and the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*  As such, the Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and 15 U.S.C. § 1121.

7.     The Court has personal jurisdiction over Defendants pursuant to N.Y. C.P.L.R. § 302, or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants transact business in New York, and committed tortious acts within and/or causing injury to Plaintiffs in New York, Plaintiffs' claims arise from those activities, and Defendants should reasonably have expected such acts to have consequences in New York and derive substantial revenue from interstate and/or international commerce.  In particular, upon information and belief, Defendants (a) transact business in New York or contract to supply goods, including counterfeit goods, in New York, (b) have committed acts of copyright and trademark infringement and counterfeiting in New York and in this District, and/or (c) have committed acts of copyright and trademark infringement and counterfeiting outside New York causing injury to Plaintiffs in New York, and Defendants expected or should reasonably have expected such acts to have consequences in New York, and Defendants derive substantial revenue from interstate or international commerce.  In addition, Defendants sell textbooks, including counterfeit copies of Plaintiffs' copyrighted textbooks bearing Plaintiffs' trademarks, through online storefronts on highly interactive websites, such as eBay.com, which are accessible to, target, and sell goods to consumers in New York.

8.     Venue is proper, *inter alia*, pursuant to 28 U.S.C. §§ 1391(b) because, upon information and belief, Defendants conduct, transact, and/or solicit business in this District.

## PARTIES

9.     Plaintiff Cengage Learning, Inc., formerly Thomson Learning Inc. ("Cengage"), is a Delaware corporation with offices located in New York.

10.    Plaintiff Elsevier, Inc. ("Elsevier"), is a Delaware corporation with a principal place of business at 360 Park Avenue South, New York, New York 10010.

11.    Plaintiff McGraw-Hill Global Education Holdings, LLC ("MHE") is a Delaware limited liability company with a principal place of business at 2 Penn Plaza, New York, New York 10020.

12.    Plaintiff Pearson Education, Inc. ("Pearson"), is a Delaware corporation with a principal place of business at 330 Hudson Street, New York, New York 10013.

13.    Defendant Doe 1 is a merchant offering for sale and selling counterfeit textbooks through its Storefront, **bargainsofmaine** (Seller URL www.ebay.com/usr/bargainsofmaine), on eBay.  The identity of Doe 1 is unknown to Plaintiffs.  Return information on shipments from bargainsofmaine indicates that Doe 1 may be located in Maine.

14.    Defendant Doe 2 is a merchant offering for sale and selling counterfeit textbooks through its Storefronts, **laca_888** (Seller URL www.ebay.com/usr/laca_888) on Ebay, **GOMEDIA** (Seller URL www.abebooks.com/gomedia-glendale-ca-u.s.a/51244649/sf) on Abebooks.com, **GOMEDIA8** (Seller URL www.biblio.com/bookstores/k_karen1.html) on Biblio.com, and **booksmedia** (Seller URL www.alibris.com/stores/booksmedia) on Alibris.com. The identity of Doe 2 is unknown to Plaintiffs.  Return information on shipments from Doe 2's Storefronts indicates that Doe 2 may be located in California.

4

15.    Defendant Doe 3 is a merchant offering for sale and selling counterfeit textbooks through its Storefront, **pepperack** (Seller URL www.ebay.com/usr/pepperack) on Ebay.   The identity of Doe 3 is unknown to Plaintiffs.   Return information on shipments from pepperack indicates that Doe 3 may be located in China.

16.    Defendant Doe 4 is a merchant offering for sale and selling counterfeit textbooks through its Storefronts, **myfriendandme02** (Seller URL www.ebay.com/usr/myfriendandme02) and **sathiel1492** (Seller URL www.ebay.com/usr/sathiel1492) on eBay.  The identity of Doe 4 is unknown to Plaintiffs.  Return information on shipments from Doe 4's Storefronts indicates that Doe 4 may be located in California.

17.    Defendant Doe 5 is a merchant offering for sale and selling counterfeit textbooks through its Storefront, **usaokdeals** (Seller URL www.ebay.com/usr/usaokdeals) on eBay.   The identity of Doe 5 is unknown to Plaintiffs.   Return information on shipments from usaokdeals indicates that Doe 4 may be located in Texas.

18.    Defendant Doe 6 is a merchant offering for sale and selling counterfeit textbooks through its Storefront, **vintagefreakie** (Seller URL www.ebay.com/usr/vintagefreakie) on eBay.  The identity of Doe 6 is unknown to Plaintiffs.   Return information on shipments from vintagefreakie indicates that Doe 6 may be located in Malaysia.

19.    Defendant Doe 7 is a merchant offering for sale and selling counterfeit textbooks through its Storefront, **warehouse-dealz** (Seller URL www.ebay.com/usr/warehouse-dealz) on eBay.  The identity and location of Doe 7 are unknown to Plaintiffs.

20.    Defendant Doe 8 is a merchant offering for sale and selling counterfeit textbooks through its Storefront, **wholsalenick** (Seller URL www.ebay.com/usr/wholsalenick) on eBay.  The identity of Doe 8 is unknown to Plaintiffs.   Return information on shipments from

wholsalenick indicates that Doe 8 may be located in Florida.

## FACTUAL ALLEGATIONS

### A.    Plaintiffs' Businesses

21.    Plaintiffs are among the world's largest providers of tailored learning solutions. In the academic marketplace, Plaintiffs serve secondary, post-secondary, and graduate-level students, teachers, and learning institutions providing quality content, assessment tools, and educational services in all available media.  Plaintiffs' publications include physical textbooks. These textbooks are widely available in the marketplace for sale or rental, including from physical and online bookstores.  Plaintiffs' products and services are sold throughout the world, through direct channels and via a worldwide network of distributors.

22.    Plaintiffs' publish their works under many imprints, or brands, that are well known and highly respected.  For example, Cengage's imprints include Brooks/Cole, Delmar, Heinle, and South-Western Educational Publishing; Elsevier's imprints include Academic Press, Butterworth Heinemann, Mosby, and Saunders; MHE's imprints include Irwin, Lange, McGraw-Hill Higher Education, among others; Pearson's imprints include Addison Wesley, Allyn & Bacon, Benjamin Cummings, and Prentice Hall.  These are just some of the Plaintiffs' many valuable and recognizable imprints.  For purposes of their claims against Defendants, Exhibit C includes a complete list of Plaintiffs' imprints (the "Imprints").

23.    Plaintiffs invest heavily in publishing their textbooks.  Each year they incur substantial costs for author royalties and other costs of content creation or licensing, copyediting and proofreading, typesetting, layout, printing, binding, distribution, promotion, and for support of their editorial offices.

24.    Plaintiffs and/or their predecessors have also invested decades of effort in

building a reputation of quality in the publishing industry, which consumers associate with Plaintiffs and their trademarks. Plaintiffs invest significant resources annually in the worldwide advertisement and promotion of their goods and services under their respective marks. Plaintiffs' Marks and the goodwill of the business associated with them in the United States and throughout the world are of tremendous value and have become associated in the public mind with Plaintiffs' reputation for publishing textbooks of the very highest quality.

25.    Plaintiffs suffer serious financial and reputational injury when their copyrights and trademarks are infringed. Both publishers and authors alike are deprived of income when their textbooks are unlawfully copied and sold, or when their copyrights are otherwise infringed, which can have serious financial and creative repercussions for them and their work. A substantial decline in revenue from sales or rentals of Plaintiffs' copyrighted works could cause Plaintiffs to cease publication of one or more deserving textbooks. This would have an adverse impact on the creation of new textbooks, on scholarly endeavor, and on scientific progress, by making it more difficult to publish deserving textbooks.

### B.    Plaintiffs' Respective Copyright Registrations

26.    Plaintiffs are the copyright owners of, and/or the owners of the exclusive rights under copyright in, *inter alia*, those works or derivative works described on Exhibit A (hereinafter, the "Authentic Works"). Plaintiffs or their affiliates have obtained copyright registrations, duly issued by the United States Copyright Office, covering their respective Authentic Works.

### C.    Plaintiffs' Respective Trademark Registrations

27.    Plaintiffs' Authentic Works bear trademarks as set forth on Exhibit B (hereinafter, the "Marks"), which Plaintiffs or their affiliates have duly registered on the Principal Registrar of the United States Patent and Trademark Office. Plaintiffs own or are the exclusive licensee of

their respective Marks.  Plaintiffs' Marks are distinctive and arbitrary and are now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.  Plaintiffs and/or their predecessors invested decades of effort in building a reputation of quality in the publishing industry, which consumers associate with Plaintiffs' Marks.

### D.    The Online Marketplaces

28.    eBay.com. is a global e-commerce platform.  The eBay online marketplace allows third-party sellers worldwide to advertise, offer for sale, and sell books, both new and used, directly to consumers.  According to its financial statements, eBay enabled $84 billion of gross merchandise volume in 2016, and currently has a total of 171 million global active buyers.

29.    The eBay site has an expansive search function giving buyers the ability to search for books by any combination of ISBN, title, author, and a number of other criteria.  Thus, with just a few keystrokes, consumers can see a list of sellers offering a particular textbook title. Each, or nearly each, listing for the title displays a stock image of the cover of the book and identifies the price of the book, whether it is available to "Buy It Now" or by auction, the cost of shipping, and whether the book offered for sale is new or used and, if used, the condition of the book.  To unsuspecting individual consumers, the listings all appear to be for legitimate copies of textbooks because they are listed with the same cover image, ISBN, edition, author, and publisher.  The consumer is left to select the book they want to purchase, which all too often is based solely or largely on the price offered.

30.    When a seller receives an order through their online storefront on eBay, the seller ships the purchased item directly to the customer.  eBay sellers choose the payment methods their storefront will accept, e.g., PayPal or eBay checkout.  The latter requires a seller to have both a payment gateway account (with Payflow, Authorize.Net, or CyberSource) and an Internet merchant account.    Payment  is  processed  upon  checkout  and  sellers  receive  payment

immediately.

31.     Like eBay, Abebooks.com is a global e-commerce platform, but it specializes in the sale of books and textbooks.  Abebooks is a wholly owned subsidiary of the world's largest e-commerce retailer, Amazon.com, Inc.  The Abebooks online marketplace allows third-party sellers worldwide to advertise, offer for sale, and sell books, both new and used, directly to consumers.

32.     The Abebooks site provides consumers the ability to search for books by ISBN or title and author.  Thus, with just a few keystrokes, consumers can see a list of third-party sellers offering a title, ranked (by default) from lowest to highest price.  Each listing for the title displays a stock image of the cover of the book and describes whether the book offered for sale is new or used and, if used, the condition of the book.  To unsuspecting individual consumers, the listings all appear to be for legitimate copies of textbooks because they are listed with the same cover image, ISBN, edition, author, and publisher.  The consumer is left to select the book they want to purchase, which all too often is based solely or largely on the price offered.

33.     When a seller receives an order through their online storefront on Abebooks, the seller ships the book(s) directly to the customer.  Abebooks processes the ensuing payments, and then distributes the sales proceeds to sellers on a regular, automated schedule to the financial institution accounts registered to the respective Abebooks seller account.

34.     The Alibris.com and Biblio.com online marketplace platforms operate similarly to Abebooks.com.  Unlike Biblio and Abebooks, merchants on Alibris can sell music, film, and TV programs in addition to books.   All three marketplaces have separate pages dedicated to textbooks.

**E.     The Growing Counterfeiting Problem**

35.     Textbook counterfeiting is rampant, particularly as a result of the ease by which

counterfeiters across the world can sell counterfeit textbooks to U.S. consumers via the many well-known online marketplace platforms.

36.     Counterfeit textbooks are often printed overseas and imported into the lucrative U.S. market.  The counterfeit books are of varying levels of quality; while some appear to be high quality, many others are not.  Some do not even contain all or the same content as the legitimate textbook.

37.     While some consumers never know they have purchased a counterfeit textbook, others learn the book is counterfeit after the book's binding starts falling apart, pages begin falling out, or after realizing that the book is missing pages or even whole chapters.  Many other consumers do not realize that the poor-quality book they received is the work of counterfeiters, and instead think the publisher's textbooks are low quality.

38.     Counterfeiters often expend significant effort to conceal their identities and often use multiple or fictitious names and addresses to register and operate what has become a massive network of Internet storefronts.  Nonetheless, there are often similarities among the storefronts. The counterfeit books may also share similar indicia of being counterfeit, which suggests that the counterfeit books were printed by and come from a common source.

39.     In addition to operating under multiple fictitious names, counterfeiters use a variety of other tactics to evade discovery and continue their lucrative, illicit business.  For example, once a counterfeiter receives notice of a lawsuit, he or she will often create new online marketplace accounts on eBay or other sites using new aliases and/or email addresses.  Further, counterfeiters often use multiple credit card merchant accounts or other payment processing accounts (such as with PayPal or Payoneer) so that they can nimbly switch between accounts to evade detection and secure their illicit proceeds.  It is common for counterfeit sellers to maintain

off-shore bank accounts outside the jurisdiction of the Court, into which they regularly move the proceeds of their illegal sales.

40.     Another way for counterfeiters to operate under the radar is to sell counterfeit textbooks as used—often described as in "very good" or "like new" condition—despite the books being brand new, albeit unauthorized, copies.  Listing new counterfeit textbooks in "used" condition ostensibly justifies Defendants' offer of a new current-edition textbook at a significant savings.  The purportedly "used" condition also can explain why a counterfeit does not include digital access cards, which the publishers often include with and as a supplement to the legitimate textbook.

41.     In order to combat the damage caused by counterfeits, Plaintiffs have created a worldwide anti-counterfeiting program, through which they go to great lengths to investigate suspicious websites and online marketplace listings.  Plaintiffs also regularly receive counterfeit books turned over to them by legitimate distributors who were sold counterfeit textbooks.

**F.     Defendants' Unlawful Activities**

42.     Through their enforcement efforts, Plaintiffs learned that Defendants sell unauthorized and illegal counterfeit textbooks, including Plaintiffs' Authentic Works, on eBay, as well as other Online Marketplaces.  Through their Storefronts, Defendants target and ship their infringing textbooks to customers located in the United States, including New York.

43.     Plaintiffs have made purchases from Defendants' Storefronts, which confirm that Defendants distribute counterfeit copies of Plaintiffs' Authentic Works bearing Plaintiffs' Marks (hereinafter, collectively, "Counterfeit Books," and each a "Counterfeit Book").

44.     While Plaintiffs have identified some of the counterfeit books that Defendants have distributed, Plaintiffs have not identified all of them.  Indeed, Plaintiffs did not identify all of the online storefronts from which they recently received counterfeit textbooks.  Rather,

Plaintiffs limited this suit to the Storefronts from which Plaintiffs received counterfeit copies of at least three different textbook titles.  The list of 34 Counterfeit Books on Exhibit A does not describe all the textbook titles that Defendants are infringing.  The titles identified on Exhibit A represent the Counterfeit Books Plaintiffs purchased from Defendants, and are just examples of the counterfeit textbooks that Defendants are believed to have introduced into the market.  Moreover, the number of textbook titles is not the same as the number of counterfeit copies Plaintiffs received from Defendants' Storefronts.  Plaintiffs purchased and received from many of Defendants' Storefronts multiple counterfeit copies of a single textbook title.

45.    Many of the Counterfeit Books Plaintiffs received from Defendants were listed as used, but in "very good" or "like new" condition, despite being in brand-new condition (sometimes still in shrink wrap).  For example, Plaintiffs purchased a copy of *American Government*, 12th edition (Cengage), listed in "Used-Very Good" condition, from the usaokdeals Storefront on eBay.  But, rather than receiving the legitimate textbook, Plaintiffs received what appears to be a brand-new, counterfeit copy.

46.    Defendants may likely operate other online storefronts on the Online Marketplaces or on other e-commerce platforms that Plaintiffs are not aware of yet.  By way of example, Plaintiffs learned that the Storefronts myfriendandme02 and sathiel1492 on eBay are operated by the same merchant, Doe 4, only after realizing that the shipments Plaintiffs received containing the Counterfeit Books identified the same return address in Vista, California.  Similarly, Plaintiffs discovered that the Storefronts laca_888 (eBay), GOMEDIA8 (Biblio), GOMEDIA (Abebooks), and booksmedia (Alibris) are all operated by a single merchant, Doe 2, after noting that all the shipments of Counterfeit Books identified Mary Fisher, Tom Baker, or Mary Smith as the return name, all with the same return address in Glendale, California.

Plaintiffs' investigation shows that multiple people reside at the Glendale address, but none are named Mary Fisher, Tom Baker, or Mary Smith.  Upon information and belief, these names are aliases used by Doe 2 to engage in the illegal and infringing activity alleged herein.

47.    Upon information and belief, Defendants intentionally purchase counterfeit copies of Plaintiffs' Authentic Works at a materially cheaper price than they would be required to pay had they purchased Plaintiffs' Authentic Works directly from the respective publishers or from legitimate third-party sellers, pursuant to the custom and practice of the bookselling industry.  In doing so, Defendants deliberately evaded legitimate sources, instead sourcing illegal and counterfeit copies of Plaintiffs' Authentic Works, in violation of Plaintiffs' intellectual property rights.  Defendants then distribute the Counterfeit Books directly to individual consumers or other resellers on the Online Marketplaces.

48.    The Counterfeit Books Defendants distributed are different from and/or inferior to Plaintiffs' Authentic Works.  For example, the Counterfeit Books' binding, glue, paper, color and printing, among other traits, are different and inferior.  Based on the use of Plaintiffs' Marks, actual and prospective purchasers are likely to believe that the Counterfeit Books are authorized and legitimate copies of Plaintiffs' Authentic Works.  The Counterfeit Books' inferior quality weakens, blurs, and tarnishes Plaintiffs' respective trademarks.  Plaintiffs' business reputations are further injured by having their trademarks and the goodwill associated with them confused or mistakenly associated with a group or series of textbooks of lesser quality, as alleged above.

49.    Some Defendants appear to be working collectively because many of the Counterfeit Books exhibit the same counterfeit traits and inferior qualities, and several of the Storefronts offer similar inventories.

50.    At the time Defendants distributed and sold the Counterfeit Books, Defendants

knew or should have known that the Counterfeit Books were infringing, including based on their "too good to be true price" and inferior quality.

51.     Defendants knowingly directed, supervised, and controlled the distribution of the Counterfeit Books, and had a direct financial interest in, and stood to gain a direct financial benefit from, their deliberately infringing activity.

52.     By engaging in the illegal conduct alleged above, in addition to directly organizing and effectuating such infringing activities, Defendants also personally induced, caused, and materially contributed to infringing conduct by others, including resellers to whom Defendants likely sold the Counterfeit Books.  Such resellers would have further distributed the Counterfeit Books.

53.     Accordingly, Defendants did more than supply the means to facilitate the infringement of Plaintiffs' intellectual property rights.  They also substantially participated in, and orchestrated, such infringing activities.

54.     Defendants' intentional and deceitful misconduct has likely resulted in lost profits to Plaintiffs and has damaged the inherent value of Plaintiffs' Authentic Works and Marks, impaired Plaintiffs' reputations for providing high-quality higher education textbooks, diluted Plaintiffs' brands and the goodwill associated with them, all of which negatively affects Plaintiffs' relationships with distributors, authors, partners, and students.

## FIRST CLAIM FOR RELIEF

### Copyright Infringement Under 17 U.S.C. §§ 101, *et seq.*

55.     Plaintiffs re-allege and incorporate by reference the allegations set forth above in paragraphs 1- 54.

56.     Plaintiffs' Authentic Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, and they are protected by registrations duly issued to Plaintiffs (or their predecessors or affiliates) by the United States Copyright Office.

57.     At all relevant times, Plaintiffs have been and still are the owners, or exclusive licensees, of all rights, title, and interest in and to their respective copyrights in Plaintiffs' Authentic Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

58.     Beginning on an unknown date but at least since early 2017 and continuing to the present, Defendants, with knowledge of Plaintiffs' copyrights in Plaintiffs' Authentic Works, infringed Plaintiffs' copyrights.  Specifically, Defendants infringed Plaintiffs' exclusive rights to distribute their copyrighted works.  They did so by, among other things, selling the Counterfeit Books for profit, without Plaintiffs' permission, license, or consent.

59.     Defendants' unlawful conduct, as set forth above, was deliberate, intentional, knowing, malicious, and willful.

60.     As a result of Defendants' unlawful and deliberate conduct as set forth above, Plaintiffs have been, and will continue to be, damaged.

61.     Defendants' actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law.  Unless this Court restrains Defendants from continuing their infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future.  Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further infringement.

## SECOND CLAIM FOR RELIEF

**Secondary Copyright Infringement Under 17 U.S.C. §§ 101, et seq.**

62.     Plaintiffs re-allege and incorporate by reference the allegations set forth above in paragraphs 1- 54.

63.     Plaintiffs' Authentic Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, and they are protected by registrations duly issued to Plaintiffs (or their predecessors or affiliates) by the United States Copyright Office.

64.     At all relevant times, Plaintiffs have been and still are the owners, or exclusive licensees, of all rights, title, and interest in and to their respective copyrights in Plaintiffs' Authentic Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

65.     Beginning on an unknown date but at least since early 2017 and continuing to the present, Defendants, with knowledge of Plaintiffs' copyrights in Plaintiffs' Authentic Works, indirectly infringed Plaintiffs' copyrights.  Specifically, Defendants knowingly engaged in, supervised, and/or controlled the distribution of the Counterfeit Books, and had a direct financial interest in, and stood to gain a direct financial benefit from their deliberately infringing activity. By engaging in the illegal conduct alleged above, in addition to directly organizing and effectuating such infringing activities, Defendants personally induced, caused, and materially contributed to infringing conduct by others, including resellers to whom Defendants sold the Counterfeit Books for further distribution.  Accordingly, Defendants are liable for contributory and vicarious copyright infringement.

66.     Defendants' unlawful conduct, as set forth above, was deliberate, intentional, knowing, malicious, and willful.

67.     As a result of Defendants' unlawful and deliberate conduct as set forth above, Plaintiffs have been, and will continue to be, damaged.

68. Defendants' actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law. Unless this Court restrains Defendants from continuing their infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future. Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further infringement.

## THIRD CLAIM FOR RELIEF

### Infringement of Federally Registered Trademarks Under 15 U.S.C. § 1114

69. Plaintiffs re- allege and incorporate by reference the allegations set forth above in paragraphs 1- 54.

70. This claim, arising under Section 32 of the Lanham Act, 15 U.S.C. § 1114, is for infringement of trademarks registered to Plaintiffs in the United States Patent and Trademark Office.

71. Without Plaintiffs' authorization, Defendants are marketing, offering for sale, and selling in commerce counterfeit textbooks under Plaintiffs' Marks.

72. Defendants' aforesaid uses of Plaintiffs' Marks have caused and are likely to continue to cause confusion, mistake, and/or deception as to the source or origin of Defendants' goods, in that the public, and others, are likely to believe that Defendants' goods are provided by, sponsored by, approved by, licensed by, affiliated with, or in some other way legitimately connected with Plaintiffs, all to Plaintiffs' irreparable harm.

73. Defendants, by their above-enumerated acts, willfully and knowingly have violated and infringed Plaintiffs' rights in and to the federally registered Marks, in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114), and Defendants threaten to further violate and infringe Plaintiffs' said rights.

74.     Defendants' actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law.  Unless this Court restrains Defendants from continuing their infringement of Plaintiffs' Marks, these injuries will continue to occur in the future.  Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further infringement.

75.     Defendants' aforesaid conduct was intentional, or deliberately reckless, and without foundation in law.

### FOURTH CLAIM FOR RELIEF

### Trademark Counterfeiting Under 15 U.S.C. § 1114(1)(a)

76.     Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1- 54.

77.     Defendants are infringing the federally registered Plaintiffs' Marks through their use in commerce of a counterfeit, copy, or colorable imitation of Plaintiffs' Marks, in connection with the sale, offering for sale, marketing, distributing, or advertising of textbooks, with such use being likely to cause confusion, to cause mistake, or to deceive the public.

78.     Defendants are intentionally using Plaintiffs' Marks on unauthorized products. Defendants are intentionally infringing upon Plaintiffs' trademark rights in order to further their own business enterprises.

79.     Defendants' counterfeiting of Plaintiffs' Marks, as described above, has caused and will continue to cause irreparable injury to Plaintiffs' reputation and goodwill, for which Plaintiffs have no adequate remedy at law.  Unless this Court restrains Defendants from continuing their counterfeiting activities, these injuries will continue to occur in the future. Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further

counterfeiting.

## PRAYER FOR RELIEF

By reason of the acts and circumstances alleged above, Plaintiffs seek relief from this Court as follows:

1.     Judgment on each of the claims set forth above, including that Defendants' infringement of Plaintiffs' Authentic Works and Marks was intentional and willful.

2.     Damages and/or restitution according to proof at trial, including exemplary damages where authorized by statute;

3.     An accounting and disgorgement of Defendants' profits, gains, and advantages realized from their unlawful conduct, including a reconciliation of purchases and sales of the Counterfeit Books with documents relating to all such purchases and sales;

4.     An order requiring Defendants to pay Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendants' unlawful acts as alleged above, including actual damages or statutory damages, at Plaintiffs' election, pursuant to 17 U.S.C. § 504;

5.     An order enjoining Defendants and those acting in concert with them from further infringing upon Plaintiffs' respective copyrights pursuant to 17 U.S.C. § 502;

6.     An order enjoining Defendants and those acting in concert with them from further infringing upon Plaintiffs' respective trademarks pursuant to 15 U.S.C. § 1116;

7.     An order requiring Defendants to pay Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendants' unlawful use of their trademarks, as alleged above, including statutory damages or treble damages, pursuant to 15 U.S.C. § 1117;

8.     An order requiring Defendants to deliver up for destruction all products, packaging, labels, literature, advertising, and other material bearing imitations, including

confusingly similar variations, of Plaintiffs' respective copyrights and marks pursuant to 17 U.S.C. § 503 and 15 U.S.C. § 1118;

9.      Prejudgment and post-judgment interest at the applicable rate;

10.     Plaintiffs' attorney's fees, expenses, and costs of suit; and

11.     Such other and further relief the Court deems proper.

## JURY TRIAL DEMAND

Plaintiffs hereby request a trial by jury.

DATED:  January 16, 2018

Respectfully submitted,

By: _____

Matthew J. Oppenheim
Kerry M. Mustico
OPPENHEIM + ZEBRAK, LLP
5225 Wisconsin Avenue NW, Suite 503
Washington, DC 20015
Tel:  (202) 480-2999
Fax:  (866) 766-1678
matt@oandzlaw.com
kerry@oandzlaw.com

*Attorneys for Plaintiffs*