UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



CENGAGE LEARNING, INC *et al.*,

                              Plaintiffs,

        -v-                                                    No. 18-cv-403 (RJS)
                                                               <u>EX PARTE ORDER</u>
DOE   1 d/b/a bargainsofmaine *et al.*,

                              Defendants.

<u>RICHARD J. SULLIVAN</u>, District Judge:

        Now before the Court are *ex parte* motions by Plaintiffs for:  (1) a Temporary Restraining Order

and Temporary Asset Restraining Order, (2) an Expedited Discovery Order, and (3) an Order to Show

Cause for a Preliminary Injunction.  For the reasons set forth below, Plaintiffs' motions are granted.

I. Background

        On January 17, 2018, Plaintiffs filed a complaint alleging that Defendants have violated and are

continuing to violate the Copyright Act (17 U.S.C. § 502(a)) and the Lanham Act (15 U.S.C. § 1116) by

importing, distributing, offering for sale, and selling counterfeit copies of Plaintiffs' copyright-protected

textbooks that bear Plaintiffs' federally registered trademarks.  (Doc. No. 1 ("Compl.").)  Specifically,

Plaintiffs, who are established textbook publishers that sell educational books and multimedia materials

worldwide, allege that Defendants are in the business of selling at least twenty-four different counterfeit

textbook titles through online marketplaces eBay.com, Abebooks.com, Alibris.com, and Biblio.com (the

"Online Marketplaces"), using the following online storefronts:

        1.  bargainsofmaine (Seller URL www.ebay.com/usr/bargainsofmaine);

        2.  laca_888 (Seller URL www.ebay.com/usr/laca_888);

        3.  GOMEDIA (Seller URL www.abebooks.com/gomedia-glendale-ca-u.s.a/51244649/sf);

4. GOMEDIA8 (Seller URL www.alibris.com/stores/booksmedia);

5. pepperack (Seller URL www.ebay.com/usr/pepperack);

6. myfriendsandme02 (Seller URL www.ebay.com/usr/myfriendandme02);

7. sathiel1492 (Seller URL www.ebay.com/usr/sathiel1492);

8. usaokdeals (Seller URL www.ebay.com/usr/usaokdeals);

9. vintagefreakie (Seller URL www.ebay.com/usr/vintagfreakie);

10. warehouse-dealz (Seller URL www.ebay.com/usr/warehouse-dealz); and

11. wolsalenick (Seller URL www.ebay.com/usr/wholsalenick).

(Compl. ¶¶ 13–20.)  The complaint asserts that the Defendants may also be operating other, unidentified, online storefronts hosted by the Online Marketplaces and other e-commerce platforms.  (*Id.* ¶ 46.) Plaintiffs allege that the sellers behind these online storefronts are anonymous and difficult to identify, and they disguise their counterfeit textbooks in various ways, including by labeling them as in "used" condition.  (*Id.* ¶¶ 38–40.)  According to Plaintiffs, the counterfeit textbooks are generally different from and often inferior to Plaintiffs' authentic textbooks.  (*Id.* ¶¶ 36–37, 48.)  They nonetheless bear sufficient resemblance to Plaintiffs' textbooks, in part because they use Plaintiffs' trademarks, that consumers would likely confuse the counterfeits with authentic textbooks.  (*Id.* ¶ 48)  Plaintiffs allege that Defendants knew or should have known that the counterfeit textbooks infringe on Plaintiffs' copyrights and trademarks, and that they are entitled to damages and profits from the sale of the counterfeit books.

## II.  TEMPORARY RESTRAINING ORDER

A plaintiff seeking a temporary restraining order must demonstrate:  (1) "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the [plaintiff]'s favor," (2) "that he is likely to suffer irreparable injury in the absence of an injunction," (3) that "the balance of hardships between the plaintiff and defendant . . . tips in the plaintiff's favor," and (4) that the "public interest

would not be disserved" by the issuance of an injunction. *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010) (citations omitted).  The Court must also determine whether "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and "(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."  Fed. R. Civ. P. 65(b)(1).

### A.  Likelihood of Success on the Merits

In order to prevail on a copyright infringement claim under the Copyright Act, 17 U.S.C. § 501, a plaintiff must show:  "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  Here, Plaintiffs are likely to succeed in establishing that they own the exclusive rights under copyright for each of the textbooks listed in Exhibit A of the Complaint (*see* Compl. ¶ 26), and that Defendants have distributed unauthorized copies of Plaintiffs' copyrighted works through various online storefronts, which Plaintiffs have confirmed through test purchases (*id.* ¶¶ 42–45).

As for the trademark infringement claim under Section 32 of the Lanham Act, 15 U.S.C. § 1114, Plaintiffs must show that:  "(1) [they have] a valid mark that is entitled to protection under the Lanham Act; and . . . (2) the defendant[s] used the mark, (3) in commerce, (4) in connection with the sale, or advertising of goods or services, (5) without the plaintiff[s'] consent." *1-800 Contacts, Inc. v. WhenU.Com*, 414 F.3d 400, 407 (2d Cir. 2005) (internal citations, quotation marks, and alterations omitted).  In addition, "plaintiff[s] must show that defendant[s'] use of that mark is likely to cause confusion as to the affiliation, connection, or association of [defendants] with [plaintiffs], or as to the origin, sponsorship, or approval of [the defendants'] goods, services, or commercial activities by [plaintiffs]." *Id.* (internal quotation marks and alterations omitted).  "[C]ounterfeit marks are inherently confusing." *Fendi Adele S.R.L. v. Filene's Basment, Inc.*, 696 F. Supp. 2d 368, 383 (S.D.N.Y. 2010).

Here, Plaintiffs are likely to succeed in establishing both that they own valid and enforceable federally registered trademarks that appear on their textbooks (*see* Compl. ¶ 27), and that Defendants have used Plaintiffs' registered trademarks in an inherently confusing way in connection with the advertising, promotion, sale, and distribution of counterfeit textbooks (*id.* ¶ 48).

Accordingly, Plaintiffs have demonstrated a likelihood of success on the merits of both their copyright and trademark infringement claims.

### B.  Irreparable Injury

Plaintiffs have also demonstrated that Defendants' infringement is ongoing and likely to deprive Plaintiffs of sales, cause market confusion, and damage Plaintiffs' reputation and good will – harms that are difficult to measure and adequately compensate with monetary damages.  *See Broad. Music, Inc. v. Pamdh Enterprises, Inc.*, No. 13-cv-2255 (KMW), 2014 WL 2781846, at *4 (S.D.N.Y. June 19, 2014) ("Harm can be irreparable, and adequate remedies at law lacking, where a copyright holder seeks to prevent the use of his or her work and, absent an injunction, the defendant is likely to continue infringing the copyright."); *Salinger*, 607 F.3d at 81 ("courts have tended to issue injunctions" in the consumer confusion context, since "to prove the loss of sales due to infringement is . . . notoriously difficult"); *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 129 (2d Cir. 2004) ("In a trademark infringement case, proof of a likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm.").  Accordingly, Plaintiffs have established that they will suffer irreparable harm in the absence of an injunction.

### C.  Balance of Hardships and Public Interest

With respect to the remaining equitable considerations, the Court finds that the balance of hardships weighs in Plaintiffs' favor.  *See, e.g.*, *Estee Lauder, Inc. v. Watsky*, 323 F. Supp. 1064, 1068 (S.D.N.Y. 1970) ("To the plaintiff its name is at stake, and continued injury to its reputation and good will would be a far more serious blow to it than the curtailment of the sale by the defendants would be

to them."). The Court also finds that an injunction would serve the public interest. *See WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012) ("[T]he public has a compelling interest in protecting copyright owners' marketable rights to their work."); *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107–08 (2d Cir. 2000) ("Trademark laws exist to protect the public from confusion."); *N.Y.C. Triathlon, LLC*, 704 F. Supp. 2d at 344 ("[T]he public has an interest in not being deceived – in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality.").

### D. Additional Prerequisites for *Ex Parte* Temporary Restraining Order

Finally, as set forth earlier, the Court must also determine whether "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). Having reviewed the materials provided by Plaintiffs, including the declarations of Dan Seymour and Kerry Mustico, which detail Defendants' unknown identities and alleged use of multiple different storefronts to operate their allegedly infringing enterprise, the Court finds that Plaintiffs have identified specific facts that satisfy this requirement. Accordingly, the Court finds that a temporary restraining order is warranted here.

### III. TEMPORARY ASSET RESTRAINING ORDER

The Court next turns to Plaintiff's motion to impose an *ex parte* temporary asset restraining order. "While a court may not freeze assets solely to secure a future money judgment, . . . 'where plaintiffs seek both equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets.'" *Balenciaga Am., Inc. v. Dollinger*, No. 10-cv-2912 (LTS), 2010 WL 3952850, at *7 (S.D.N.Y. Oct. 8, 2010) (citing *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 329–33 (1999), and quoting *Wishnatzki & Nathel, Inc. v. H.P. Island-Wide, Inc.*, No. 00-cv-

8051 (JSM), 2000 WL 1610790, at *1 (S.D.N.Y. Oct. 27, 2000)).   Both the Copyright Act and the Lanham Act entitle a plaintiff who establishes a violation of his rights in connection with a registered copyright or trademark to recover a defendant's profits.  *See* 17 U.S.C. § 504(b) ("The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."); 15 U.S.C. § 1117(a) (allowing plaintiff "subject to the principles of equity, to recover . . . defendant's profits").   District courts therefore have authority to freeze a defendant's assets insofar as they could be used to satisfy an award of profits under either statute.  *See Gucci Am., Inc. v. Weixing Li*, No. 10-cv-4974 (RJS), 2011 WL 6156936, at *4 (S.D.N.Y. Aug. 23, 2011), *aff'd in relevant part and vacated on other grounds*, 768 F.3d 122 (2d Cir. 2014) (trademark); *Lions Gate Films Inc. v. Does*, No. 14-cv-06033 (MMM), 2014 WL 3895240, at *7 (C.D. Cal. Aug. 8, 2014) (copyright); *see also Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12-cv-6283 (AJN), 2012 WL 4901407, at *2 (S.D.N.Y. Oct. 11, 2012) ("Courts in this district have exercised their equitable powers in Lanham Act cases to restrain assets to preserve the return of profits derived from the sale of counterfeit goods and to insure counterfeiting [p]laintiffs the accounting to which they are entitled.") (collecting cases); Fed. R. Civ. P. 64(a) (with respect to provisional remedies, "a federal statute governs to the extent it applies").   The "purpose of freezing assets is to preserve security for plaintiff's future recovery on an accounting of the counterfeiter's profits."  *See N. Face Apparel Corp. v. TC Fashions, Inc.*, No. 05-cv-9083 (RMB), 2006 WL 838993, at *3 (S.D.N.Y. Mar. 30, 2006) (internal quotation marks omitted).

Here, in addition to seeking money damages and a permanent injunction, Plaintiffs seek an accounting and disgorgement of the profits made by Defendants as a result of their counterfeiting operation.  (*See* Compl. at 19 (requesting "[a]n accounting and disgorgement of Defendants' profits, gains, and advantages realized from their unlawful conduct").)   "An accounting of profits is equitable relief that authorizes a district court to freeze a party's assets."  *Gucci*, 2011 WL 6156936, at *4.

Furthermore, the asset freeze imposed in this Order limits itself to assets that are proceeds of Defendants' counterfeiting operations. *See Gucci*, 2011 WL 6156936, at \*4 (issuing injunction that "freezes assets in accounts that have been specifically connected to Defendants' counterfeiting operation" (citing *Grupo Mexicano*, 527 U.S. 308); *see also Balenciaga*, 2010 WL 3952850, at \*7 (noting that "the burden is on the party seeking relief" from asset freeze order "to 'present documentary proof that particular assets [are] not the proceeds of counterfeiting activities.'" (quoting *Cartier Int'l B.V. v. Liu*, No. 02-cv-7936 (TPG), 2003 WL 1900852, at \*1 (S.D.N.Y. Apr. 17, 2003)). Accordingly, the Court concludes that a temporary asset freeze is appropriate in order to determine the amount by which Defendants profited from their counterfeiting activities and to preserve security for Plaintiffs' future recovery.

In addition, the Court finds that the requirements of Federal Rule of Civil Procedure 65(b) are satisfied and that an *ex parte* order is warranted. Defendants have hidden their identities and locations (Seymour Decl. ¶¶ 12–14) and "have both incentive and capacity to hide their assets." *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005). Thus, the Court agrees that Plaintiffs would suffer irreparable harm if denied the proposed *ex parte* asset restraint and that such injury would outweigh any harm to Defendants' legitimate interests from granting such an order.[1]

## IV. Expedited Discovery

"A party may seek expedited discovery before the Federal Rules of Civil Procedure Rule 26(f) conference when authorized by a court order." *Next Phase Distrib., Inc. v. John Does 1-27*, 284 F.R.D. 165, 171 (S.D.N.Y. 2012) (citing Fed. R. Civ. P. 26(d)(1)). Courts in this District "use a 'flexible standard of reasonableness and good cause' when considering whether to grant such an order." *Id.* (citation omitted). Additionally, "[c]ourts in this District have found 'good cause' for expedited discovery to determine the identity of John Doe defendants where the plaintiff has stated a prima facie

---

[1] Because the Court concludes that Plaintiffs are entitled to an asset freeze under the Copyright Act and Lanham Act, the Court declines to address the merits of Plaintiffs' alternative arguments for similar relief under Rule 64 and N.Y. C.P.L.R. § 6201.

case and is unable to identify the defendants without a court-ordered subpoena." *AdMarketplace, Inc. v. Tee Support, Inc.*, No. 13-cv-5635 (LGS), 2013 WL 4838854, at *2 (S.D.N.Y. Sept. 11, 2013) (collecting cases).  Here, the Court finds that Plaintiffs have shown good cause for expedited discovery to identify Defendants and the accounts used by Defendants in furtherance of their alleged infringement of Plaintiffs' copyrights and trademarks.  The Court further finds that the scope of the expedited discovery, as set forth in the Order below, is reasonable.

## V.  SERVICE BY EMAIL

Regardless of whether Defendants reside in the United States or in a foreign country, the Court finds that service via Defendants' email addresses is appropriate and satisfies due process.  If Defendants reside in the United States, Federal Rule of Civil Procedure 4(e) applies, which permits service that "follow[s] state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located," Fed. R. Civ. P. 4(e)(1) – here, New York State.  According to Rule 308(5) of the New York Civil Practice Law and Rules, service is permitted "in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section."  N.Y.C.P.L.R. § 308(5).  Paragraphs one, two, and four provide for:  "(1) personal service; (2) delivering the summons to a person of suitable age and discretion at the individual's actual place of business, dwelling place or usual place of abode, and mailing it; (3) serving the individual's agent; or (4) affixing the summons to the individual's actual place of business, dwelling place, or usual place of abode, and mailing it."  *Sec. Exch. Comm'n v. Nnebe*, No. 01-cv-5247 (KMW) (KNF), 2003 WL 402377, at *3 (S.D.N.Y. Feb. 21, 2003).

As Plaintiffs explain, "[n]o information is listed on the Online Storefronts' pages revealing any true legal names or physical addresses for Defendants or their Online Storefronts."  (Seymour Decl. ¶ 12.)  Because Defendants appear to have concealed their true identities and contact information, apart from the email addresses Plaintiffs have identified, and because Defendants communicate with

customers primarily (or even exclusively) through email, the Court finds that the modes of service contemplated by N.Y.C.P.L.R. § 308(1), (2), and (4) are impracticable, and that service by email is appropriate and satisfies due process here.  *See Alfred E. Mann Living Trust v. ETIRC Aviation S.a.r.l.*, 78 A.D.3d 137, 141 (1st Dep't 2010) (collecting cases) ("[B]oth New York courts and federal courts have, upon application by plaintiffs, authorized e-mail service of process as an appropriate alternative method when the statutory methods have proven ineffective.").

With respect to Defendants residing in a foreign country, Federal Rule of Civil Procedure 4(f) applies.  "Under Federal Rule of Civil Procedure 4(f)(3), 'a Court may fashion means of service on an individual in a foreign country, so long as the ordered means of service (1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process.'"  *Fed. Trade Comm'n v. PCCare247 Inc.*, No. 12-cv-7189 (PAE), 2013 WL 841037, at *2 (S.D.N.Y. Mar. 7, 2013) (citation omitted).  "'Service of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant.'" *Id.* (citation omitted).  Thus, "'[t]he decision of whether to order service of process under Rule 4(f)(3) is 'committed to the sound discretion of the district court.''"  *Id.* (citation omitted).  Even if Defendants reside in a country that is a signatory to the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"), the Hague Convention does not apply where, as here, "the address of the person to be served with the document is not known." Hague Convention art. 1, Nov. 15, 1965, 20 U.S.T. 361.  In addition, the Court finds that service by email here comports with due process for the reasons stated above.  *See, e.g.*, *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 330–31 (S.D.N.Y. 2015) (finding that service to defendant's email address "comport[ed] with constitutional notions of due process" where "[t]he email address in question [was] listed prominently on [defendant's] Internet homepage" and defendant "presumably relie[d] at least partially on contact through [that email address] to conduct overseas business"); *Philip*

*Morris USA Inc. v. Veles Ltd.*, No. 06-cv-2988 (GBD), 2007 WL 725412, at *3 (S.D.N.Y. Mar. 12, 2007) (finding that "the alternative means of service by email and fax . . . was reasonably calculated to apprise defendants of the pendency of this action" where plaintiffs "showed that defendants conduct business extensively, if not exclusively, through their Internet websites and correspond regularly with customers via email").  Accordingly, the Court finds that service of Defendants by email is appropriate in this matter.

## VI. Relief

For the reasons set forth above, in accordance with Rule 65 of the Federal Rules of Civil Procedure, the Copyright Act (17 U.S.C. § 502(a)), the Lanham Act (15 U.S.C. § 1116), and the Court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief, and no prior application having been granted, IT IS HEREBY ORDERED THAT:

1.    Defendants, their officers, directors, agents, servants, representatives, employees, successors, and assigns, and all those acting in concert or in participation with any of them, are enjoined from:

      a)    Directly or indirectly infringing any copyrighted work that is owned or controlled by any of Plaintiffs ("Plaintiffs' Works"), *i.e.*, any copyrighted work published under any of the imprints identified on Appendix A (the "Imprints");

      b)    Directly or indirectly infringing any trademark that is owned or exclusively controlled by any of Plaintiffs, including the trademarks associated witht eh Imprints in Appendix A ("Plaintiffs' Marks");

      c)    Directly or indirectly manufacturing, importing, distributing (including returning goods purchased from another), offering for sale, and/or selling counterfeits of Plaintiffs' Works;

      d)    Enabling, facilitating, permitting, assisting, soliciting, encouraging or inducing

others to directly or indirectly infringe Plaintiffs' Works, Plaintiffs' Marks, and/or manufacture, import, distribute, offer for sale and/or sell counterfeits of Plaintiffs' Works; and

2.      Defendants, their officers, directors, agents, servants, representatives, employees, successors, and assigns, and all those acting in concert or in participation with any of them who receive actual notice of this Temporary Retraining Order must immediately locate all accounts holding or receiving money or other assets owned, connected to, associated with, or utilized or held by any of Defendants' Online Storefronts ("Defendants' Accounts"), immediately cease transferring, withdrawing, or otherwise disposing of any money or other assets in Defendants' Accounts, and stop allowing such money or other assets in Defendants' Accounts to be transferred, withdrawn, or otherwise disposed of pending further order of this Court.  For purposes of this Temporary Restraining Order, Defendants' Accounts includes but is not limited to:  (a) Defendants' Accounts with eBay.com or other Online Marketplaces; and (b) Defendants' accounts with banks, financial institutions, and credit card or other payment processing companies that have received money or other assets from Defendants' Accounts or otherwise received sales proceeds from Defendants' Storefronts ("Financial Institutions").

3.      Defendants, their officers, directors, agents, servants, representatives, employees, successors, and assigns, and all those acting in concert or in participation with any of them, must, upon receiving notice of this Temporary Restraining Order, immediately locate all physical copies of Plaintiffs' Works that are within their possession, custody or control, or held in inventory on behalf of any Defendant, and immediately cease selling, distributing, transferring, or disposing of Plaintiffs' Works pending an inspection by Plaintiffs as provided in the Expedited Discovery Order below.  Any copies of Plaintiffs' Works determined by Plaintiffs during the inspection to be not counterfeit shall, upon Plaintiffs' notice of such determination, be exempt from this Temporary Restraining Order.

IT IS FURTHER ORDERED THAT this Temporary Restraining Order shall remain in effect

until March 5, 2018, the date of the show cause hearing, or such further date as set by the Court.

IT IS FURTHER ORDERED THAT Plaintiffs shall post security in the amount of $2,500, by corporate surety bond, cash, credit card, or a certified or attorney's check.

IT IS FURTHER ORDERED THAT upon two (2) business days' written notice to the Court and Plaintiffs' counsel, any Defendant or restrained third party may appear and move for the dissolution or modification of the provisions of this Temporary Restraining Order upon an appropriate evidentiary showing.

IT IS FURTHER ORDERED THAT Plaintiffs' motion for leave to take expedited discovery, prior to a Rule 26(f) conference, is GRANTED.  IT IS FURTHER ORDERED THAT, within three (3) days of service of this Ex Parte Order, each Defendant, their officers, agents, servants, employees, and attorneys, and all those in active concert or participation with any of them, including the Online Marketplaces and Financial Institutions, shall serve upon Plaintiffs' counsel, by email at kerry@oandzlaw.com, written disclosure of the following information, regardless whether such information physically resides in the United States or abroad:  (1) Defendants' respective true names and physical addresses; (2) any and all storefront or seller names through which Defendants have sold any of Plaintiffs' Works, along with the names of the associated online marketplace platforms or websites, and the associated seller identification numbers or URLs; and (3) the account details for any and all of Defendants' Accounts with the Online Marketplaces and/or Financial Institutions, including account numbers, current account balances, and accountholders' or account signatories' true names and physical addresses.

IT IS FURTHER ORDERED THAT, within five (5) days of service of this Ex Parte Order, each Defendant, their officers, agents, servants, employees, and attorneys, and all those in active concert or participation with any of them, including the Online Marketplaces and Financial Institutions, shall serve upon Plaintiffs' counsel, by email at kerry@oandzlaw.com, written disclosure of the following

information, regardless whether such information physically resides in the United States or abroad:  each Defendants' sales of Plaintiffs' Works from January 1, 2017 to the present, including number of units sold, price per unit, total gross revenues received, and the dates thereof.

IT IS FURTHER ORDERED THAT Plaintiffs may issue discovery requests to Defendants seeking to conduct an inspection of some or all of Plaintiffs' Works held in inventory by or on behalf of a Defendant.  Plaintiffs and such subpoena recipients shall work cooperatively to coordinate the prompt inspection of Plaintiffs' Works.  Any Works that Plaintiffs confirm to be counterfeit during the inspection shall be turned over to and/or held by Plaintiffs until this matter is concluded as to the respective Defendant.  Plaintiffs shall provide notice of their determination to the respective Defendant promptly after completing the inspection.  Plaintiffs shall promptly return any Works that they determine to be not counterfeit, and such Works are immediately exempt from the Temporary Restraining Order.

IT IS FURTHER ORDERED THAT service of process may be made on, and shall be deemed effective as to, Defendants by the following means:  (1) by electronic mail to Defendants' email addresses identified by the Storefronts' Online Marketplaces as associated with or utilized by Defendants to conduct the business of Defendants' Storefronts; or (2) if a Defendant's email address is unknown or determined inoperable, by delivery of an electronic message to Defendants through the system for communication between consumers and the Storefronts established by the Online Marketplaces on their respective platforms.

IT IS FURTHER ORDERED THAT Plaintiffs shall effect alternate service by electronic mail as ordered herein by providing Defendants with a link to a secure website (such as Dropbox.com or other File Transfer Protocol ("FTP") site) PDF copies of:  (1) this Ex Parte Order; (2) the Summons and Complaint; and (3) all papers filed in support of Plaintiffs' Application.  IT IS FURTHER ORDERED THAT the alternative service by electronic mail ordered herein shall be made within five (5) days of the Online Marketplaces' identification of Defendants' Accounts with Financial Institutions as provided

above, but in any event, no later than ten (10) days from the date of this Ex Parte Order.  Plaintiffs shall properly file proof of such service on the docket.

IT IS FURTHER ORDERED THAT Defendants shall appear on March 5, 2018 at 10:00 a.m., or as soon thereafter as counsel can be heard, in Courtroom 905 of the Thurgood Marshall United States District Court for the Southern District of New York, 40 Foley Square, New York, New York 10007, to show cause why an order should not be entered pursuant to Federal Rules of Civil Procedure 64 and 65, the Copyright Act (17 U.S.C. § 502(a)), the Lanham Act (15 U.S.C. § 1116), and the Court's equitable authority, granting Plaintiffs a preliminary injunction enjoining Defendants, their officers, directors, agents, servants, representatives, employees, successors, and assigns, and all those acting in concert or in participation with any of them, in a manner substantially similar to the relief provided in the Temporary Restraining Order above, pending resolution of this case or further order of this Court.

Defendants are hereby given notice that failure to attend the hearing scheduled by this Order may result in confirmation of the restraints authorized herein, immediate issuance of the prayed-for Preliminary Injunction to take effect immediately upon expiration or dissolution of the within Temporary Restraining Order, and shall otherwise extend relief for the pendency of this litigation upon the same or similar terms and conditions as comprise this Temporary Restraining Order.

SO ORDERED.

Dated:      January 17, 2018
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE